# Exhibit 2

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 1:22-CV-23753-KMM**

EDWIN GARRISON, et al. on behalf of
themselves and all others similarly
situated,

      Plaintiff,

v.

SAM BANKMAN-FRIED, et al.,

      Defendants.

_____/

**<u>DECLARATION OF DAN FRIEDBERG</u>**

I, <u>Dan Friedberg</u>, declare as follows:

    1.    I am a citizen and permanent resident of the United States. I am over 18 and am competent to make this Declaration.

    2.    I am admitted to practice law in the State of Washington. I served as chief compliance officer of West Realm Shires Services, Inc. ("FTX.US") and chief regulatory officer of FTX Trading Ltd. ("FTX International") until I resigned as described below. I have personal knowledge of the facts stated herein.

    3.    I am providing non-privileged information about aspects of the business of the FTX Entities and certain celebrities that served as what we called FTX Brand Ambassadors.  As set forth below, many of these activities occurred in, and/or were emanated, from our FTX offices in Miami, Florida.

## I.      My Role with FTX International, FTX US, and Alameda Research

4.      I was introduced to Samuel Bankman-Fried ("Sam") by his father who is a prominent tax professor at Stanford. I represented Alameda Research LLC ("Alameda") and then FTX International as outside counsel when I served as Chair of the Fintech group at an outside law firm since about the time that Sam left Jane Street to form his own trading firm.

5.      In early 2020, when Sam decided to form FTX.US, I left my law firm to work full time for him. Ultimately, there were over a dozen lawyers retained, including the General Counsel for FTX.US (Ryne Miller), the General Counsel for FTX International (Can Sun), and the General Counsel for FTX Ventures (Tim Wilson) (Alameda, FTX International and FTX US shall hereafter be referred to as "the Organization").

6.      The goal was for the General Counsels to report directly to Sam where possible in the case of FTX International, the President of FTX.US in the case of FTX.US, and to the CEO of Alameda in the case of FTX Ventures.  I oversaw all lawyers -- as needed -- to efficiently deliver legal services to the Organization.

## II.     Events Leading Up to My Resignation From the Organization

7.      On November 7, 2022, certain FTX personnel including Defendant Sam Bankman-Fried informed certain executives in the Bahamas of the existence of an $8 billion customer deficit with respect to FTX International.

8.      The FTX International general counsel contacted me by zoom to inform me of this shocking development.

9.      Prior to this disclosure, I had no idea of any customer deficit. I believed that the customer assets were fully funded on a 1:1 basis as represented to customers.

10.     I reviewed my ethical obligations and felt that there was substantial risk that I would be used to further additional fraud in connection with the additional investment efforts if I stayed on. In addition, I no longer trusted Sam, Gary, or Nishad, and did not think that I could proceed under such circumstances.

11.     I therefore tendered my resignation the following day.

## III.     Events Leading Up to My Cooperation With Plaintiffs

12.     I was named as a Defendant in this action, in the current operative complaint filed on December 16, 2022. ECF No. 16.

13.     After I was served with the Complaint, I called Plaintiffs' Counsel on March 3, 2023, to discuss an extension of time to file and serve my Response to the Complaint. I left a telephone message and was called back by Plaintiffs' Counsel. They asked me if I was represented in this matter, and I told him that I am a lawyer and that I was proceeding *pro se*.

14.     I told Plaintiffs' Counsel that I did not have any personal knowledge of the issues that the Organization was facing, until shortly before my resignation.  I also told Plaintiffs' Counsel that I wanted to cooperate and assist for the benefit of the FTX customers.

15.     I explained to Plaintiffs' Counsel that at that point in time, I had already spent much money paying for counsel and that I had spent significant time disclosing everything I knew about these events to various federal officials and parties to the "Bankruptcy Action," pending in the United States Bankruptcy Court for the District of Delaware and styled *In re: FTX Trading Ltd., et al.*, No. 22-11068-JTD.

16.     Plaintiffs' Counsel informed me to make sure to not reveal any information that could be covered by attorney-client privilege and/or any other potentially applicable privilege or confidentiality protections. I certainly agreed and have not disclosed any such information.

17.     Plaintiffs' Counsel further asked me to make sure that any cooperation I provided to Plaintiffs, and the proposed Class, would not in any manner interfere with, and/or run contrary to any state or federal investigations. I agreed and reaffirmed to them that I had met extensively with federal authorities to assist with their investigation against the perpetrators.

18.     Against this backdrop, I represented to Plaintiffs' Counsel that I was more than willing to help the injured FTX customers, and we agreed that we would explore a possible resolution, whereby I would: (a) provide proof that I did not have significant, non-exempt assets in light of the quantum of damages sought, available to provide monetary relief to Plaintiffs or the Class, in the event they obtained a judgment against me in this Action, and (b) provide non-privileged information and assistance that could benefit the harmed customers in terms of seeking out and obtaining possible recoveries. After reviewing all the applicable facts and evidence, Plaintiff's Counsel confirmed that Plaintiffs and the Class would seek preliminary (and then final) approval by the Court, of a proposed class-wide settlement and resolution of the claims against me.

19.     I have been very careful not to provide Plaintiffs, and the Class, with any information that could ever be considered as covered by the attorney-client privilege and/or any other potentially applicable privilege or protection.

## IV.    FTX's Miami Office and Miami-Based Business Activities

20.     FTX maintained an office in Miami, Florida, since early 2021, long before we eventually moved FTX's Domestic headquarters to Brickell in late 2022.  Since early 2021, our Miami office was run by Mr. Avinash Dabir, who originally worked for Blockfolio, which FTX later acquired, and eventually became FTX's Vice President of Business Development. I met with Mr. Dabir often and I am very familiar with him and his activities.

*Declaration of Dan Friedberg*
*CASE NO.: 1:22-CV-23753-KMM*

21.     Mr. Dabir, operated from our Miami office, and he was focused on formulating and executing our important FTX celebrity partnerships. Mr. Dabir had a lot of prior experience working with some of the major sports industries, including the NBA.

22.     It is my opinion that Mr. Dabir was very good at his job, and it was his idea to expend significant resources on FTX's sports and celebrity-based partnerships.  Mr. Dabir specifically started by suggesting FTX form a Partnership with the Miami Heat and the naming rights to the Miami Arena.  FTX announced the Partnership in March 2021, and included FTX purchasing the naming rights of the Miami Heat stadium for 19 years in a deal worth approximately $135 million.

23.     The naming of the "FTX Arena" served an important centerpiece for our efforts to reach other FTX partnerships with celebrities and other well-known partners. Mr. Dabir was the senior FTX executive responsible for creating, consummating, and implementing deals between FTX and other Partners, such as Major League Baseball, the MLB Umpire's Association, TSM, the Mercedes Formula 1 team, Tom Brady, Stephen Curry, the Golden State Warriors, Naomi Osaka, Larry David, and Shohei Ohtani.

24.     Having Larry David agree to conduct a commercial for FTX during the 2022 Super Bowl was a very big event for FTX because, to my knowledge, it was the first time that he had ever agreed to serve as a spokesperson for any product.  Mr. Dabir deserves much of the credit for creating that idea and concept and collaborating with Mr. David and his team, resulting in the award-winning Super Bowl FTX commercial that aired with the Super Bowl in 2022.

25.     If called upon to testify, I would testify competently to the facts set out in this Declaration.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: May 7, 2023

_____

**Daniel Friedberg**